# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | |
|---|---|
| **GERALD GARRISON,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.:  6:12-CV-2659-RDP |
| } | |
| **LOWELL ADAM HADDER, et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

Before the court is Defendant Lowell Adam Hadder's Motion to Dismiss (Doc. #19), filed on September 26, 2012.  Defendant Hadder (sometimes referred to simply as "Defendant") asserts that he is absolutely immune from suit in his official and individual capacities and that he is entitled to qualified immunity in his individual capacity.  Plaintiff filed a Response on October 3, 2012. (Doc. # 24).  Defendant did not file a reply.  The Motion (Doc. #19) is properly under submission. For the reasons discussed below, Defendant's Motion is due to be granted in part and denied in part.

### I.  BACKGROUND AND RELEVANT FACTS

Plaintiff initiated this lawsuit on August 8, 2012.  (Doc. #1).  Defendant Hadder filed a First Motion to Dismiss (Doc. #8) on August 27, 2012.  That Motion was denied without prejudice after the court granted Plaintiff leave to file an Amended Complaint on September 7, 2012.  (Doc. #17). Plaintiff filed an Amended Complaint on September 17, 2012.  (Doc. #18).

Plaintiff's Amended Complaint asserts three 42 U.S.C. § 1983 claims against Defendant for violations of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. (*Id.*).  The facts as alleged in Plaintiff's Amended Complaint are as follows.  Plaintiff is an employee of a private investigative business located in Madison, Alabama that provides various services to

attorneys and others, including serving summons and subpoenas. (*Id.* at 9). On July 15, 2012 after being released from his Alabama National Guard Unit, Plaintiff traveled to Jasper, Alabama in an attempt to serve Defendant with a subpoena in an action that was pending in Marshall County. (*Id.* at 10-15).[1] When Plaintiff arrived at the address listed on the subpoena, Plaintiff met Defendant's father, who told Plaintiff that Defendant did not live at that house but at a home across the street. (*Id.* at 15-16). Defendant's father also told Plaintiff that Defendant was not home at that time. (*Id.* at 16). Plaintiff then attempted to contact the Walker County Sheriff's Office in an attempt to locate Defendant. (*Id.* at 17). Plaintiff traveled back to Defendant's father's house to leave his contact information, but no one answered the door. (*Id.* at 18). Plaintiff then went to Defendant's house and left a note in the mailbox providing his name, position, and telephone number, and asking Defendant Hadder to contact Plaintiff. (*Id.* at 19).

Around 8:00 p.m. on July 16, 2012, Plaintiff returned to Defendant's home and pulled into the driveway; however, Plaintiff could not approach the front door because a fence surrounded the residence and two large dogs were inside the fence. (*Id.* at 20). Plaintiff honked his horn "a couple of times" in an attempt to get Defendant to open the door. (*Id.*). Plaintiff then moved his car from Defendant's driveway and parked across the street where he waited until about 10:30 p.m. (*Id.* at 21).

Plaintiff returned to Defendant's home on July 17, 2012 around 6:15 a.m. and parked across the street to watch for Defendant. (*Id.* at 22). Approximately two hours later, Defendant left his

---

[1] Marshall County case DR-2007-484.01 was filed electronically on April 5, 2011. (*Id.* at 10). The defendant in that action was or is married to Defendant's sister. (*Id.* at 11). The circuit clerk issued a subpoena on July 12, 2012 ordering "Adam Hadder" to "appear at trial/hearing" on July 20, 2012, at 9:00 a.m. (*Id.* at 12). Plaintiff was hired to serve the subpeona to Defendant in accordance with Ala. R. Civ. P. 45(b)(1). (*Id.* at 14).

home wearing his Walker County Sheriff's Office uniform and got into his patrol car. (*Id.* at 23). Plaintiff pulled into Defendant's driveway at that time to prepare to hand him the subpoena. (*Id.* at 24). Defendant then closed the front gate of his driveway. (*Id.*). Plaintiff attempted to get Defendant's attention, but Defendant drove to the back gate and drove away. (*Id.* at 25). Plaintiff got into his car, pulled onto the highway, and drove near where the back gate driveway connected with the highway. (*Id.* at 26). Plaintiff pulled onto the shoulder of the road to attempt to serve Defendant as he drove by. (*Id.*).

Defendant Hadder drove in Plaintiff's direction and, as Plaintiff approached Defendant's car with the subpoena in hand, Defendant "rolled down his driver side window and verbally threatened [Plaintiff] that he was very close to being arrested." (*Id.* at 27). Plaintiff was standing on the State's right of way near the edge of the highway when Defendant drove past him. (*Id.* at 28). At that time, Plaintiff put the subpoena in Defendant's car, and it landed in Defendant's lap. (*Id.*). Defendant "immediately slammed on his breaks and jumped out of his patrol car throwing the subpoena on the ground." (*Id.* at 29). Defendant yelled at Plaintiff to put his hands behind his back and Plaintiff complied. (*Id.* at 30).

Defendant Hadder then "grabbed and assaulted [Plaintiff] by pushing him into the side of his vehicle and grabbing [Plaintiff's] arms and binding them in handcuffs." (*Id.* at 31). Defendant then told Plaintiff: (a) "You are f***ing stupid;" (b) "This is f***ing Walker County; and (c) "You better never harass my parents again." (*Id.* at 33). Plaintiff then asked Defendant why he was being arrested and Defendant told him, "You are being arrested for Criminal Littering, Criminal Trespass, and Criminal Mischief." (*Id.* at 34). When Plaintiff tried to tell Defendant that he had not committed those crimes and was serving Defendant with court papers, Defendant responded by

3

stating that it was Plaintiff's fault and that he "was an officer of the law and [Plaintiff] should not have f***ed with [him]." (*Id.* at 35-36). Defendant then refused Plaintiff's request that he be allowed to call someone to get his car. (*Id.* at 37). Defendant then took Plaintiff's belongings from inside the car and made a list of the items being taken. (*Id.* at 38).

At some point, Defendant Hadder radioed the Walker County Sheriff's Office to notify the office that Plaintiff had been arrested and was being transported to jail. (*Id.* at 39). Defendant also called a wrecker to tow Plaintiff's car to an impound lot. (*Id.* at 40). Defendant transported Plaintiff to the Walker County Sheriff's Office and upon pulling into the "sally-port" area of the jail, removed Plaintiff from the back seat and took him to the booking area. (*Id.* at 41-43). Jail personnel initially refused to book Plaintiff into the jail because they questioned whether there was a legal basis for his arrest. (*Id.* at 44). Jail personnel apparently informed Defendant they would not book Plaintiff until Defendant cleared it with "Chief Painter." (*Id.* at 45). Defendant left Plaintiff in a jail cell while he went to find "Chief Painter." (*Id.* at 46). Defendant returned with two other jail personnel who escorted Plaintiff to the second floor of the Walker County Sheriff's Office. (*Id.* at 48).

Defendant Hadder then told Plaintiff he had "spoken with the District Attorney and the District Attorney want[ed] to prosecute [Plaintiff]" and that he had "spoken with the Chief and he want[ed] to prosecute [Plaintiff]." (*Id.* at 49). Defendant handed Plaintiff papers to sign that "purportedly released Defendant [] and others from the acts and omissions surrounding the unlawful search and seizure of [Plaintiff's] property, the unlawful search of his person, and his unlawful arrest and confinement, in exchange for his release." (*Id.* at 50). Defendant told Plaintiff that he would "be creative" and hold Plaintiff for 72 hours if Plaintiff did not sign the papers. (*Id.* at 51).

4

When Plaintiff asked if he was free to go, Defendant Hadder told Plaintiff that he would be taking him to retrieve his car. (*Id.* at 53). Defendant required Plaintiff to ride in the back seat of the patrol car at which point Defendant told Plaintiff that Plaintiff's behavior was "inappropriate" and that Plaintiff "had broken the law and was getting off easy." (*Id.* at 55). Defendant let Plaintiff out of the back seat of the patrol car when they arrived at the impound lot. (*Id.* at 56). Plaintiff's supervisor arrived shortly thereafter, and Defendant told Plaintiff and his supervisor that he "was within his legal rights in arresting [Plaintiff]" and that "he had confirmed his actions were lawful because the 'Judge' and the 'District Attorney' had said so." (*Id.* at 57-58). Defendant required Plaintiff to pay $150.00 for the release of his car from the impound lot. (*Id.* at 60).

Defendant Hadder was served with the Original Complaint in this action on August 9, 2012, and the next day he posted a message on the *Daily Mountain Eagle's* Facebook page that referred to the lawsuit as "frivolous." (*Id.* at 65). Two days later, Defendant posted a message on the same Facebook page that stated "He's lucky he's still breathing." (*Id.* at 66).

**II.    STANDARD OF REVIEW**

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557. In deciding a Rule 12(b)(6)

motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

The Supreme Court has recently identified "two working principles" for a district court to use in applying the facial plausibility standard. First, in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the court does not have to accept as true legal conclusions when they are "couched as [] factual allegation[s]." *Iqbal*, 129 S. Ct. at 1950. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Application of the facial plausibility standard involves two steps. Under prong one, the court must determine the scope and nature of the factual allegations that are well-pleaded and assume their veracity; and under prong two, the court must proceed to determine the claim's plausibility given the well-pleaded facts. That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Id.*

### III.    DISCUSSION

#### A.    Defendant Hadder is Entitled to Immunity on Official Capacity Section 1983 Claims

Courts have long held that a state official sued in his official capacity is not considered a "person" subject to suit for money damages under 42 U.S.C. § 1983. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989); *see also Greffey v. State of Ala. Dept. of Corrections*, 996 F. Supp. 1368, 1378 (N.D. Ala. 1998). The Supreme Court has recognized that suits against an individual acting in his official capacity impose liability on the governmental entity the official represents. *See Will*, 491 U.S. at 71 ("Obviously state official literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . . As such, it is no different from a suit against the State itself.").

Under Alabama law, sheriffs and deputy sheriffs are state officers. *See, e.g., Hereford v. Jefferson Cnty.*, 586 So. 2d 209, 210 (Ala. 1991); *Parker v. Amerson,* 519 So. 2d 442 (Ala. 1987). Here, Plaintiff's claims for money damages against Defendant in his official capacity are the functional equivalent of claims against the state. *See Monell v. Dept. of Social Servs.*, 436 U.S. 659, 690 n. 55 (1978) (noting that suits against officials in their official capacities "generally represent only another way of pleading an action against an entity of which an official is an agent"). Therefore, it follows that Plaintiff's Section 1983 claims for money damages against Defendant in his official capacity are due to be dismissed.[2] However, Plaintiff's claims against Defendant in his individual capacity are not subject to dismissal.

---

[2] The court need not address Defendant's misplaced argument that he is entitled to absolute immunity in his official capacity under Ala. Code § 6-5-338. This section provides immunity from tort liability for acts carried out in the line and scope of an officer's law enforcement duties. Plaintiff has not asserted any tort law claims in his pleadings. Therefore, this particular form of immunity is inapplicable here.

### B. On the Pleadings, Defendant Hadder is Not Entitled to Immunity on Individual Capacity Section 1983 Claims

The law is well-established that in Alabama, pursuant to Article I, Section 14 of the Alabama Constitution, sheriffs and deputy sheriffs are absolutely immune from suits for damages when "acting within the line and scope of their employment." *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1431 (11th Cir. 1998); *Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996). In other words, sheriffs and deputy sheriffs, in their official and individual capacities, are absolutely immune from suit when the action is, in effect, one against the state. *Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989). Therefore, as long as "a sheriff or deputy acts within the scope of his or her employment, immunity exists with respect to *state-law claims*, even for willful or malicious actions." *Harrington v. City of Phenix City*, 2012 WL 204168, at *7 (M.D. Ala. Jan. 24, 2012) (emphasis added).

First, Plaintiff does not allege any state law claims against Defendant Hadder. Rather, Plaintiff asserts three Section 1983 claims against him for unlawful arrest, unlawful search, and unlawful seizure in violation of Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights. Second, suits against state officials in their individual capacities are claims against the officials themselves as relief is sought from the person, not the governmental entity he represents. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Accordingly, Defendant Hadder is a "person" subject to suit under Section 1983, when sued in his individual capacity. *See Toth v. City of Dothan*, 953 F. Supp. 1502, 1507 (M.D. Ala. 1996) (noting that state officials sued in their individual capacities are "persons" for purposes of Section 1983 and that they may be held personally liable for damages under Section

1983 for actions taken in their official capacities). Thus, the court will not dismiss Plaintiff's claims against Defendant in his individual capacity.[3]

### C.    On the Pleadings, Defendant Hadder is Not Entitled to Qualified Immunity

"The doctrine of qualified immunity provides that government officials performing discretionary functions generally are shielded from liability for civil damages" unless they have violated a clearly established constitutional right. *Townsend v. Jefferson County.*, 601 F.3d 1152, 1157 (11th Cir. 2010) (citation and internal quotation marks omitted). The purpose of qualified immunity is to allow officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, *Anderson v. Creighton*, 483 U.S. 635, 638–39 (1987), "protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citation and quotation marks omitted).

A qualified immunity determination requires the application of a multi-part test. First, a defendant must establish that he was acting within his discretionary authority as a public employee when the conduct in question occurred. *Townsend*, 601 F.3d at 1158. Next, a plaintiff must demonstrate "'that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation.'" *Id*. (quoting *Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)).

In previous years, this two-step inquiry had to be conducted in sequential order. That is, the court had to decide whether a right existed (and whether it was violated) before deciding whether

---

[3] To the extent Defendant argues he is immune from suit based upon Plaintiff's releasing Defendant from any liability following the incident, this argument is better framed as an affirmative defense, which Defendant has the burden of proving. *See Vallone v. Lee*, 7 F.3d 196, 198-99 (11th Cir. 1993) (holding that the issue of the voluntariness of a release was an issue properly decided by a jury and that trial court properly instructed the jury that "the defendant must prove . . . that . . . the plaintiff executed the agreement voluntarily, knowingly, and free of duress"). Therefore, at this stage, the court will not dismiss Plaintiff's claims based on any purported release from liability.

]it was clearly established. Now, courts may "'exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

A district court may dismiss a complaint when the complaint contains allegations which will clearly support the defense on the face of the complaint. *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993). Assuming Plaintiff's factual allegations are true, as it must, this is not a case where qualified immunity is due to be granted at this stage. Defendant arrested Plaintiff and seized his belongings for what Defendant says were violations of federal regulations regarding placing unauthorized material into Defendant's mailbox. (Doc. #19, page 4). Defendant properly notes that the Fourth Amendment does not prohibit a warrantless arrest for a minor criminal offense–even one punishable only by a fine. *See Atwater v. City of Lago Vista*, 532 U.S. 318 (2001). However, the statute cited by Defendant (18 U.S.C. § 1725) requires specific intent "to avoid payment of lawful postage." *See* 18 U.S.C. § 1725. Nothing in the Plaintiff's Amended Complaint suggests Defendant was even aware that Plaintiff had placed anything in Defendant's mailbox at the time of his arrest. (*See* Doc. #18). Additionally, nothing alleged in Plaintiff's Amended Complaint indicates he had specific intent to avoid paying lawful postage when he left his contact information in Defendant's mailbox. (Doc. #18, ¶ 19). Furthermore, Defendant told Plaintiff he was being arrested for "Criminal Littering, Criminal Trespass, and Criminal Mischief." (Doc. #18, ¶ 34).

Based on these allegations, the court finds that Defendant Hadder is not entitled to qualified immunity at this time. In light of the factual allegations contained in the well-pleaded complaint,

Defendant has not made a sufficient showing that he was acting in his discretionary authority.[4]  But, even if that were not the case, Plaintiff has made factual allegations in his complaint indicating that Defendant violated a constitutional right of Plaintiff's that was clearly established at the time of the alleged violation.

The court recognizes that qualified immunity is not only immunity from liability, but also immunity from defending the suit itself.  *See e.g.*, *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996); *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985).  The court also recognizes that once limited, narrowly tailored discovery takes place, Defendant's qualified immunity defense may be reasserted.  Therefore, the court contemplates bifurcating discovery in this action in order to afford the parties an opportunity to fully brief the qualified immunity issue.  The court will discuss with the parties whether and how to do so during the scheduling conference, to be conducted on a date to be determined by the court.

**IV.   CONCLUSION**

For the reasons stated above, Defendant's Motion (Doc. #19) is due to be granted in part and denied in part.  The following claims are due to be dismissed with prejudice against Defendant in his official capacity but will not be dismissed against Defendant in his individual capacity:

   (1)   Count 1: 42 U.S.C. Section 1983 (Unlawful Arrest);

   (2)   Count 2: 42 U.S.C. Section 1983 (Unlawful Search);

   (3)   Count 3: 42 U.S.C. Section 1983 (Unlawful Seizure).

---

[4]To establish that challenged actions were within the scope of discretionary authority, "a defendant must show that those actions were: (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Harbert Intern., Inc.v. James*, 157 F.3d 1271 (11th Cir. 1998). "A bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice." *Espanola Way Corp. V. Meyerson*, 690 F.2d 827, 830 (11th Cir. 1982).

A separate order consistent with this Memorandum Opinion will be issued.

    **DONE** and **ORDERED** this   5th   day of November, 2012.

                                            **R. DAVID PROCTOR**
                                            UNITED STATES DISTRICT JUDGE